Not Reported in N.E.2d

Not Reported in N.E.2d, 1985 WL 6860 (Ohio App. 8 Dist.)
(Cite as: Not Reported in N.E.2d)

Page 1

C
Only the Westlaw citation is currently available.
CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eighth District,
Cuyahoga County.
TRANSAMERICA INSURANCE COMPANY
Plaintiff-Appellee
v.
S.A.I. MARKETING CORPORATION
Defendant-Appellant
NO. 49256.
49256
June 13, 1985.

Civil appeal from Common Pleas Court Case No. 066,264.

For Plaintiff-Appellee: JAMES W. BARNHOUSE, ESQ., Kitchen, Messner & Deery, 1305 The Superior Building, Cleveland, Ohio 44114.
For Defendant-Appellant: ROBERT W. SOUTHARD, ESQ., BRUCE T. WALLACE, ESQ., Hooper, Hathaway, Price, Beuche & Wallace, 126 South Main Street, Ann Arbor, Michigan 48104.

JOURNAL ENTRY and OPINION
MARKUS, J.

*1 A manufacturer of automotive testing devices sued the distributor that supplied its component electrical capacitors, claiming that the distributor supplied the wrong capacitors. The manufacturer asserted that the distributor's capacitors had failed or threatened to fail in this usage, so the manufacturer's automotive testing devices are defective. After initially defending that case, the distributor's liability insurer disclaimed any further duty to defend or indemnify the distributor for that suit. The insurer then sought and obtained a declaratory judgment that the policy afforded the distributor no protection from the manufacturer's liability claims.

The distributor appeals, arguing that the policy covers this claim or that the insurer's early defense of the claim precludes its later denial of coverage. The insurer contends that the manufacturer's claims fall outside the defined coverage and within special exclusions for "loss of use" and "sistership" recall claims. We conclude that the manufacturer's lawsuit asserts claims which at least arguably seek damages for "property damage" caused by an "occurrence" within the policy coverage. Further, part of those claims fall outside the exclusions upon which the insurer relies.

Therefore, the insurer has a duty to defend the distributor against the manufacturer's suit. We cannot now determine whether the insurer will have a duty to indemnify the distributor against any resulting liability. The duty to indemnify will depend upon the precise basis for any such liability.

I.

The parties submitted this case to the trial judge for decision on the pleadings, stipulated facts, and brief testimony from the distributor's vice-president. In large part, the facts are undisputed.

Acting as the sales agent for producers of electronic capacitors, the distributor sold and shipped 105,000 capacitors to the automotive testing equipment manufacturer. The manufacturer installed those capacitors in 105,000 timing light devices, many of which it then sold to its customers. The manufacturer's lawsuit alleges that it ordered "film foil capacitors", but that the distributor supplied "metallized capacitors" which did not conform to the manufacturer's specifications. The complaint then asserts:
"15. As a direct and proximate result of Defendants [the distributor and the capacitor producers] breach of contract in failing to supply the specified

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                        Page 2
Not Reported in N.E.2d, 1985 WL 6860 (Ohio App. 8 Dist.)
**(Cite as: Not Reported in N.E.2d)**

capacitors, each of the 105,000 timing lights is defective and has failed or will fail after a brief period of use by the ultimate purchaser.
"* * * *
"17. The non-conforming capacitors supplied by Defendants have caused injury and will in the future cause further injury to Plaintiff [the automotive equipment manufacturer] in the following respects:
"a. Plaintiff has lost the value of the purchase price it paid to Defendants.
"b. Plaintiff has incurred and will incur in the future the cost of shipping, handling, storing, repairing and returning to its customers inductive timing lights which are defective as a direct and proximate result of Plaintiff's [sic] failure to provide capacitors in conformity with Plaintiff's specifications.
*2 "c. Plaintiff has incurred and shall incur the cost of recalling, testing, repairing, replacing and/or refunding the purchase price of those timing lights containing defective capacitors which have been sold to third-parties and in making price adjustments and warranty extensions in favor of purchasers of [the manufacturer's] timing lights containing the non-conforming capacitors.
"d. Plaintiff has suffered and will continue to suffer substantial damage to its trade name, business, and reputation as a direct and proximate result of the use and installation of the non-conforming capacitors in products sold by the Plaintiff.
"* * * *
"20. The failure of said capacitors to conform to Plaintiff's specifications constituted a breach of Defendants' implied warranty of fitness for the particular purpose for which the capacitors were to be used....
"* * * *
"23. The failure of said capacitors to conform to Defendants' implied warranty of merchantibility for the particular purpose for which said capacitors were to be used constitutes a defective condition in said product....
"* * * *
"25. Defendants failed to exercise due care in warning and informing Plaintiff that they intended to supply and did supply to Plaintiff component materials for [the manufacturer's] timing lights which did not meet the specifications ... and which materials were not fit for their ordinary intended purchase.

"26. Defendants negligently manufactured and failed to test the capacitors which they sold to Plaintiff.
"* * * *
"28. Said negligence has directly and proximately caused, and will directly and proximately cause in the future, injury to Plaintiff in the respects set forth in Paragraph 17 of this Complaint."

The complaint seeks three million dollars as compensatory damages. While the declaratory relief case was pending before the same trial judge, the manufacturer filed an amended complaint, which seeks four million dollars as compensatory damages plus one million dollars as punitive damages.

At the time of the transactions between the distributor and the automotive equipment manufacturer, the distributor had a comprehensive general liability policy from this insurer. The policy provides:
"The company shall pay on behalf of the insured [the distributor] all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence. The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent....

The policy defines two significant terms. " Occurrence" means:
"[A]n accident, inluding continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

"Property damage" means:(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d  Page 3
Not Reported in N.E.2d, 1985 WL 6860 (Ohio App. 8 Dist.)
**(Cite as: Not Reported in N.E.2d)**

*3 The insurer relies in part on two exclusions in the policy:"This insurance does not apply:
"* * * *
"(e) to loss of use of tangible property which has not been physically injured or destroyed resulting from
"* * * *
"(2) The failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products have been put to use by any person or organization other than an insured ["loss of use" exclusion];
"(f) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein; ... ["sistership" recall exclusion]"

This policy does not contain exclusions for a " products hazard" or a "completed operations hazard ", which are found in some general liability policies.

The distributor's vice-president testified that he had arranged the sales which gave rise to the manufacturer's lawsuit. He reported that the manufacturer's vice-president later called him to complain about the capacitors which the distributor supplied:
"[H]e told me that he had defective capacitors, that the capacitors were no good because they were open. They were damaged physically inside."

This witness explained that the manufacturer's timing lights used a higher voltage than he had expected. The capacitors he sold "would not stand that high a current." The higher voltage would permanently damage the capacitors, so no current would pass through them to operate the timing lights. He also testified that he had not intended to sell incorrect capacitors.

The distributor gave its insurer timely notice of the manufacturer's lawsuit. The insurer advised that it denied coverage but would defend the distributor while reserving its rights and defenses under the policy. Its letter to the distributor said:
"Transamerica Insurance Company will provide a defense and indemnity to the extent that damages are determined to have resulted from a consequence of the failure of your product. However, Transamerica Insurance Company will not be responsible for those damages to your product itself. "

The insurer selected counsel who represented the distributor by filing pleadings and participating in discovery. Three months after the insurer undertook the distributor's defense, the insurer changed its position and denied all responsibility to defend or indemnify for these claims. The insurer then directed its retained defense counsel to withdraw from the manufacturer's case. That counsel terminated his representation one month later, when the insurer filed this action for declaratory relief.

*4 The distributor's sole assigned error contests the judgment, arguing that the policy, applicable case law, and the insurer's earlier actions required the insurer to defend. To evaluate these contentions, we must first determine whether the law of Ohio or the law of Michigan controls their resolution. The insurer apparently delivered the policy to the insured distributor in Michigan, and the manufacturer filed its suit in Ohio. The distributor maintains offices in both states. Neither party asks us to apply Michigan law or claims any conflict between Michigan and Ohio law applicable to these issues. Hence, we apply Ohio law, though we may periodically refer to comparable Michigan authorities.

A liability insurer has a duty to defend its insured if the policy language encompasses any of the claims asserted, regardless of their ultimate resolution. "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d  
Not Reported in N.E.2d, 1985 WL 6860 (Ohio App. 8 Dist.)  
**(Cite as: Not Reported in N.E.2d)**

Page 4

[T]he scope of the allegations of the complaint in the action against the insured" can establish the insurer's obligation to defend. Motorists Mutual v. Trainor (1973), 33 Ohio St. 2d 41, paragraph two of the syllabus. Accord, Dochod v. Central Mutual Ins. Co. (Mich. App. 1978), 264 N.W.2d 122; Reurink Bros. Star Silo, Inc. v. Maryland Cas. Co. (Mich. App. 1983), 345 N.W.2d 659.

The duty to defend results when the complaint's allegations or other evidence shows that the claim is "potentially or arguably within the policy coverage." Willoughby Hills v. Cincinnati Ins. Co. (1984), 9 Ohio St. 3d 177, 180. Accord Reurink, supra; Detroit Edison Co. v. Michigan Mutual Ins. Co. (Mich. App. 1980), 301 N.W.2d 832. The insurer must "accept the defense of the claim" when "there is some doubt whether a theory of recovery within the policy coverage has been pleaded." Id. However, the insurer has no duty to defend if its policy excludes coverage for the situation alleged in the complaint against its insured. Zanco, Inc. v. Michigan Mut. Ins. Co. (1984), 11 Ohio St. 3d 114.

In this case, the insurer's policy potentially protects against some of the claims for part of the losses alleged in the manufacturer's suit. The manufacturer arguably asserts that the distributor unintentionally supplied capacitors which suddenly failed after the manufacturer incorporated them into its timing lights. Such failures apparently constitute "loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products ... after such products have been put to use" by others [see exception in "loss of use" exclusion].

In effect, the manufacturer seeks indemnity from the distributor for claims by its customers when its timing lights failed because the distributor's capacitors failed. Those claims seek payment for "property damage" caused by an "occurrence' which are not precluded by the "loss of use" or "sistership" recall exclusions. They differ from the claims in Zanco, supra, for which similar policy language excluded coverage. In Zanco, the claimant sought payment for defects in the insured's work, rather than consequential damages from incorporating the insured's defective work into its own products. Cf.

Hartford Accident & Indemnity Co. v. Olson Bros., Inc. (Nebr. 1971), 188 N.W.2d 699, 704; Chambers Gasket & Mfg. Co. v. General Insurance Co. (Ill. App. 1975), 331 N.E.2d 203, 205.

*5 The distributor argues that the policy also covers other parts of the manufacturer's claims. It asserts that all the timing lights were physically injured or destroyed if its capacitors rendered them potentially defective. Cf. Arcos Corporation v. American Liability Ins. Co. (E.D. Pa. 1972), 350 F.Supp. 380, aff'd 485 F.2d 678 (welding wire which would not withstand special stresses from atomic reactor caused "property damage" when the manufacturer using that wire had to replace it to prevent potential failures). But of. Hogan v. Midland National Ins. Co. (Cal. App. 1970), 476 P.2d 825.

Allegations that the insured's allegedly defective part caused damage or failure for an assembly incorporating it can constitute claims for "property damage" or "physical injury". U.S. Fidelity & Guarantee Co. v. Nevada Cement Co. (1977), 561 P.2d 1335; Thomas J. Lipton, Inc. v. Liberty Mutual Ins. Co. (N.Y. 1974), 314 N.E.2d 37; Goodyear Rubber & Supply Co., Inc. v. Great American Ins. Co. (C.A.9, 1973), 471 F.2d 1343; Bundy Tubing Co. v. Royal Indemnity Co. (C.A.6, 1962), 298 F.2d 151; Aetna Casualty & Surety Co. v. General Time Corp. (C.A.2, 1983), 704 F.2d 80.

Similarly, allegations that the insured's component part significantly diminished the value of the total assembly may create a duty for the insurer to defend. Aetna Casualty & Surety Co. v. PPG Industries (D. Ariz. 1983), 554 F.Supp. 290; American Motorists Ins. Co. v. Trane Co. (C.A.7, 1983), 718 F2d 842.

The distributor contends that the "sistership" recall exclusion does not apply when the claimant recalls its own product which incorporated the insured's allegedly defective component. Cf. Honeycomb Systems, Inc. v. Admiral Ins. Co. (D.Me. 1983), 567 F.Supp. 1400, 1407; Int'l Hormones, Inc. v. Safeco Ins. Co. (N.Y. App. 1977), 394 N.Y.S.2d 260; Elco Industries, Inc. v. Liberty Mutual Ins. Co. (Ill. App. 1980), 414 N.E.2d 41, 45. But cf. Hamilton Die Cast, Inc. v. U.S. Fidelity &

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d   Page 5
Not Reported in N.E.2d, 1985 WL 6860 (Ohio App. 8 Dist.)
**(Cite as: Not Reported in N.E.2d)**

Guarantee Co. (C.A.7, 1975), 508 F.2d 417 (such losses are not the result of an "occurrence"); Tel-Tru Mfg. Co. v. North River Ins. Co. 9App. Div. 1982), 456 N.Y.S.2d 287, 288 ("sistership" recall exclusion applies to recalls by assembler who incorporated insured's component); Commercial Union Ins. Co. v. Glass Lined Pipe Co. (Ala. 1979), 372 So.2d 1305, 1309.

We need not determine whether the specific language in this insurer's policy also covers the manufacturer's other claims for unsold timing lights or its recall campaign. The insurer must defend the charge that the distributor unintentionally sold capacitors which suddenly failed and thereby caused claims for defective timing lights. The insurer may have a corresponding duty to indemnify the distributor within its policy limits for any liability from that charge. However, speculation about the insurer's duty to indemnify for other claimed losses would be premature until the precise nature of those losses has been established.

### III.

We disagree with the distributor's contention that the insurer's early defense of the manufacturer's lawsuit estops it from denying coverage now. The insurer notified the distributor at the outset that it denied coverage and undertook the defense without waiving its right to dispute the coverage. Having fully reserved its right to challenge the coverage, the insurer precluded any claim that the insured reasonably relied on the insurer's continued defense.

*6 Ordinarily, an insurer is estopped to deny its duty to defend only when (a) it undertakes the defense without advising the insured about its disclaimer of coverage, and (b) its withdrawal causes significant prejudice to the insured who reasonably relied on the insurer's apparent willingness to defend. See 14 Couch Cyclopedia of Insurance Law (Anderson ed. 1965), Sec. 51.80; Transamerica Insurance Group v. Chubb & Son, Inc. (Wash. App. 1976), 554 P.2d 1080.

In this case, the distributor received adequate notice that the insurer disputed any obligation to defend.

Further, the distributor has failed to demonstrate any prejudicial reliance on the insurer's actions. Its hope that the insurer would continue to pay for its defense does not constitute prejudicial reliance.

Having concluded that the insurer has a duty to defend the manufacturer's suit against the insured distributor, we reverse the trial court's judgment. Pursuant to App. R. 12(B), we enter the judgment which the trial court should have entered by declaring the insurer's duty to defend that suit.

It is, therefore, considered that said appellant recover of said appellee his costs herein.

It is ordered that a special mandate be sent to said Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PARRINO, P.J., and JACKSON, J., CONCUR.
N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.

Ohio App., 1985.
Transamerica Insurance Co. v. S.A.I. Marketing Corp.
Not Reported in N.E.2d, 1985 WL 6860 (Ohio App. 8 Dist.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Westlaw.

Date of Printing: AUG 14,2006

## KEYCITE

©Transamerica Insurance Co. v. S.A.I. Marketing Corp., **1985 WL 6860 (Ohio App. 8 Dist., Jun 13, 1985) (NO. 49256)**

**History**

=> 1 **Transamerica Insurance Co. v. S.A.I. Marketing Corp.,** 1985 WL 6860 (Ohio App. 8 Dist. Jun 13, 1985) (NO. 49256)

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.